IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON PACIFIC METAL FABRICATION,
LLC, an Oregon limited liability company,

        Plaintiff,

v.

JOSLIN GROUP, a Hawaii corporation,

        Defendant.

CV No. 05-1513-AS

FINDINGS AND
RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

Currently before the court is defendant's Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, to Transfer Venue (docket No. 5). For the reasons that follow, defendant's motion should be GRANTED on the ground that this court lacks personal jurisdiction over defendant.

**BACKGROUND**

The Amended Complaint of plaintiff Oregon Pacific Metal Fabrication ("OPMF") seeks payment from defendant Joslin Group ("Joslin") on a theory of account stated, as well as damages

for breach of contract, fraudulent misrepresentation, and intentional interference with a contractual relationship. These claims are based on allegations that Joslin failed to pay for steel OPMF caused to be delivered to Hawaii for use in Joslin's construction project. Joslin, a Hawaii corporation with its principal place of business in Kahului, Hawaii, filed the present motion seeking: (1) to dismiss the action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that this court lacks personal jurisdiction over Joslin; (2) to dismiss the action pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) on the ground that this court is not the proper venue; or (3) to transfer the action pursuant to Rule 12(b)(3) and 28 U.S.C. § 1404(a) on the ground that Hawaii would be a more convenient forum for the parties and witnesses.

The relevant facts are taken from the First Amended Complaint and declarations submitted by the parties. In late February or early March 2005, William Comm, OPMF's manager, placed a bid with Joslin to supply fabricated steel for Joslin's construction project in Kahului, Hawaii. Negotiations between Mr. Comm in Oregon and Joslin's representative, Sean West, in Hawaii, led Joslin to issue a purchase order to OPMF on April 29, 2005. During the following months, changes to the contract were negotiated by telephone, fax and e-mail, between Joslin's representatives in Hawaii and OPMF's representatives in Oregon.

During the last week of May 2005, Joslin's representatives, Sean West and David Hoppe, traveled to Oregon to meet with OPMF. The parties agree that the meeting was to review work in progress, *i.e.*, that by the time the trip took place, the contract had been negotiated, executed, and partially performed. Joslin offers the declaration of Sean West, which states that the meeting took approximately two hours and consisted of a production inspection followed by a review of OPMF's billing. Mr. West declares that during the production inspection Joslin learned that OPMF had

2 - FINDINGS AND RECOMMENDATION

subcontracted with Stevens Equipment Corporation ("Stevens"), another Oregon company, to fabricate the steel. He further declares that, at the billing review, Mr. Comm informed him that OPMF had a contract with Stevens that required Joslin to pay OPMF and Stevens by joint check.

Mr. West declares that Joslin never had any meetings or discussions with Stevens outside the presence of OPMF. In contrast, Mr. Comm asserts that Joslin met with Stevens without OPMF's knowledge or consent during the Oregon trip and in the weeks that followed. Comm Dec., ¶ 14. He maintains that the relationship between the Joslin and OPMF changed as a result of these meetings, specifically that Joslin "never paid another invoice in full to OPMF" and "made payment only by checks made out jointly to Stevens and OPMF, and only for an amount, which approximated the invoices which Stevens had sent to OPMF." Comm Dec. ¶ 15.

OPMF maintains that, on August 9, 2005, the parties agreed to modify the terms of the contract to provide "that the shipment held on the docks in Hawaii would be released to Joslin based upon [its] promise to make payment in full within twenty-one (21) days." Comm Dec. ¶ 17. OPMF maintains that it "met the terms of the agreement, and released the steel for inspection," that "Joslin never notified OPMF of any claim for defects" but never paid for the shipment and breached the agreement. Id.

Joslin ascribes the dispute to different origins: "The dispute related to a number of problems related to the billings and deliveries made by OPMF to Joslin in Hawaii. Those problems included defects in the fabrication of the steel; failure to submit enough information concerning the fabrication and delivery of the steel to enable Joslin to submit its own bill for payment to the project owner; failure to allow Joslin to inventory deliveries; OPMF's demand for payment before due as a condition of continuing performance under the Purchase Order and the discovery by Joslin that

OPMF was not actually fabricating the steel but was having it done by another company, who OPMF failed to pay." Joslin Dec., ¶ 7.

The parties agree that OPMF withheld a shipment of steel that arrived in Hawaii in early September, and demanded payment from Joslin. On September 12, 2005, OPMF's attorney notified Joslin that he had prepared a Notice of Lien for filing in Hawaii and that OPMF intended to start foreclosure proceedings upon the materialman's lien. Joslin Dec., ¶ 8. OPMF filed the present action on September 29, 2005.

## LEGAL STANDARDS

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move for dismissal on the grounds that the court lacks personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993), citing Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). When a court does not conduct an evidentiary hearing, but makes its jurisdictional decision based on pleadings and affidavits, the plaintiff is required merely to make a prima facie showing of personal jurisdiction to defeat a motion to dismiss. Data Disc, 557 F.2d at 1285. That is, plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant. Ballard, 65 F.3d at 1498.

To establish personal jurisdiction, a plaintiff must show that the forum state's long-arm statute confers personal jurisdiction over the out-of-state defendant and that the exercise of jurisdiction does not violate federal constitutional principles of due process. Haisten v. Grass Valley Med. Reimbursement Fund, 784 F.2d 1392, 1396 (9th Cir. 1986). Oregon's long-arm statute confers jurisdiction to the extent permitted by due process and consequently, the sole issue is whether

exercising jurisdiction would violate Joslin's right to due process. See Ore. R. Civ. P. 4 L; Oregon *ex rel.* Hydraulic Servocontrols Corp. v. Dale, 294 Or. 381 (1982).

OPMF contends that there is general and specific jurisdiction over Joslin. For general jurisdiction, OPMF must show that Joslin's contacts with Oregon are continuous and systematic, "of the sort that approximate physical presence." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1085 (9th Cir. 2000). For specific jurisdiction, plaintiff must show that Joslin has minimum contacts with Oregon such that the exercise of jurisdiction would comport with due process. There is a three-part test to determine whether the exercise of specific jurisdiction comports with due process: "(1) The defendant must have done some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990).

## DISCUSSION

In support of its argument that Joslin is subject to general jurisdiction in Oregon, OPMF offers the testimony of its manager, William Comm: "I know that Joslin has regularly contracted with companies located outside of Hawaii, including Oregon, to avail [itself] of the commercial benefits available in these localities." Comm Dec., ¶ 3. He further testifies that Joslin came to Oregon in May 2005, among other purposes, "to secure additional equipment for the project in Hawaii." Id., ¶ 14. Other than that, there is no allegation or testimony that would tend to support that Joslin should be subject to general jurisdiction in Oregon. At most, what plaintiff has shown is that Joslin has made purchases from suppliers in states other than Hawaii, including Oregon, and

that it may have contacted other Oregon companies during a visit to Oregon in May 2005. That is insufficient to establish that this court has general jurisdiction over Joslin because OPMF has failed to show that Joslin's contacts with Oregon are continuous and systematic, of the sort that approximate physical presence. Joslin has no offices or agent in Oregon, and the fact that it may have made purchases from Oregon suppliers does not render it subject to the general jurisdiction of Oregon courts.

To establish specific jurisdiction, OPMF must demonstrate that all three prongs of the minimum contacts test are satisfied. McGlinchy v. Shell Chemical Co., 845 F.2d 802, n. 10 (9th Cir. 1988).

**I. Purposeful Availment**

The "most critical" element of the minimum contacts test is the first: purposeful availment. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997). A defendant has purposely availed himself of the benefits of the forum state if he has deliberately "engaged in significant activities within a State or has created continuing obligations between himself and the residents of the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985) (citations and internal quotation marks omitted).

A contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction. Id. at 478. Nor does the foreseeability of causing injury in another state. Id. at 474. The factors to be considered are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. at 479. The course of dealing refers to the disputed contract, not any dealing between the parties that is unrelated to the cause of action. See Naumes, Inc. v. Alimentos del Caribe, 77 F. Supp. 2d

1158, 1163 (D. Or. 1999) (collecting cases). In general no purposeful availment is found in actions based on breach of contract when the plaintiff initiates the contract, the goods are delivered to the out-of-state defendant and the contract was not negotiated in the forum state. See id., 1161-63 (collecting cases).

This case is similar to Naumes in which the Oregon-based plaintiff solicited the foreign defendant to purchase pears to be shipped from Oregon free on board to California. In that case, the court found that the foreign defendant had not purposefully availed itself of Oregon's laws so as to justify the exercise of personal jurisdiction over the defendant. Id. at 1163. In the present case, OPMF admits that it initiated contact with Joslin by submitting a bid to supply steel to be delivered to Hawaii. The parties agree that the negotiations were conducted remotely, with OPMF negotiating from Oregon and Joslin negotiating from Hawaii. Though the agreement provided for multiple shipments, it fulfilled Joslin's needs for a single construction project and was not intended to initiate any ongoing, long-term or continuing obligations between the parties.

OPMF asserts that Naumes is distinguishable in that it concerned the purchase of goods, whereas the contract in the present case is more akin to a purchase of services because the steel was made to Joslin's specifications. OPMF's argument is not persuasive. It is reasonable to assume that the foreign purchaser of pears in Naumes required the Oregon grower to comply with certain specifications, *e.g.*, the type, quality and size of pears, degree of ripeness, the manner of harvesting and packing, whether the pears were to be grown organically or with pesticides, etc. We can only assume that the pears were subject to the purchaser's specifications because the Naumes court did not address that factor. That is most likely because courts have not found dispositive whether goods were to be purchased "as is" or to specifications. See Naumes, 77 F. Supp. 2d 1161-63 (collecting

7 - FINDINGS AND RECOMMENDATION

cases). Purchasers typically impose some specifications on the goods they purchase, and that fact, in and of itself, does not establish that the purchaser has purposefully availed itself of the laws of the seller's forum. Cases in which a foreign purchaser has been found to have purposefully availed itself of the laws of the seller's forum generally concern contracts that create long-term relationships and effects in the seller's forum, such as franchise agreements. Id. The contract between OPMF and Joslin was for the purchase of steel for a single construction project. It was not open-ended, but rather finite, certain, and to be performed over a period of months. In accepting OPMF's invitation to enter into the contract at issue, Joslin did not purposefully avail itself of the laws of Oregon.

OPMF also urges the court to apply the so called foreign-acts-with-forum-effects test to find purposeful availment. See Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1399 (9th Cir. 1986). In Haisten, the court noted that whether that standard should be applied depends on the "quality and nature" of the contract and whether it creates a "substantial connection" with the forum state. Id., citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957); Burger King, 105 S. Ct. at 2186. For example, it may be appropriate to apply the foreign-acts-with-forum-effects standard in actions based on contracts of insurance or indemnity because those create a continuing obligation between the parties and may implicate personal injury to the forum state's residents. Id. at 1399. Thus, in Haisten, the court found that a Caiman Islands reimbursement fund, established solely to provide malpractice insurance for California doctors, was subject to specific jurisdiction in California, despite the fund's lack of *any* physical contacts with California. 784 F.2d at 1399-1400.

The present case, however, is more like Naumes than Haisten. The contract for the purchase of steel did not create a continuing obligation between OPMF and Joslin similar in quality and

8 - FINDINGS AND RECOMMENDATION

nature to a contract of insurance. Moreover, it did not implicate the safety of any Oregon residents, *i.e.*, to the extent the contract had effects in Oregon, they were solely economic. For these reasons, the court declines OPMF's invitation to apply the foreign-acts-with-forum-effects standard in this case.

OPMF's tort claims—for fraudulent misrepresentation and interference with contract—likewise fail the test of purposeful availment. The fraud claim alleges that Joslin mislead OPMF that it would pay an outstanding balance to secure further performance of the contract. As such, the allegations add an element of intent to the breach of contract claim, but do not alter the conclusion that Joslin's contacts with Oregon fail to rise to the level of purposeful availment.

Regarding the contractual interference claim, OPMF does allege, on information and belief, that Joslin met with Stevens outside the presence of OPMF when Joslin visited Oregon in May 2005. However, OPMF also asserts that communications between Joslin and Stevens occurred during "the weeks which followed" the May 2005 visit. Comm Dec., ¶ 14. While Joslin first became aware of Stevens' existence—and that Stevens was fabricating the steel OPMF was supplying—during the May 2005 visit, there is no allegation that Joslin ever returned to Oregon to negotiate with Stevens. Rather, OPMF asserts that the alleged interference occurred during a course of communications that followed the Oregon visit. That Joslin first learned of Stevens during a visit to Oregon is insufficient to find purposeful availment in regard to OPMF's contractual interference claim where OPMF asserts that Joslin and Stevens communicated over the weeks that followed the Oregon visit. Moreover, OPMF must also establish both of the remaining prongs of the minimum contacts test—that the claims arose out of Joslin's Oregon contacts and that the exercise of jurisdiction would be reasonable. As discussed below, OPMF fails to do so.

## II. Did the Claims Arise Out of the Oregon Contacts

The Ninth Circuit has adopted a "but for" standard to determine whether the second prong of the minimum contacts test is satisfied, *i.e.*, whether the plaintiff's claims arise out of the defendant's contacts with the forum state. Doe v. Unocal Corp., 248 F.3d 915, 920, 924 (9th Cir. 2001). Thus, OPMF must show that it would not have been injured but for Joslin's contacts with Oregon. Regardless of how slight Joslin's contacts with Oregon may be, OPMF's alleged injuries did arise from those contacts. Since OPMF's injuries would not have occurred if Joslin had not contracted to purchase the steel, this element is satisfied. See Gray & Co. v. Firstenberg Machinery Co., Inc., 913 F.2d 758, 761 (9th Cir. 1990) (finding same in regard to a contract action in which there was no purposeful availment).

## III. Fair Play and Substantial Justice

The third element of the minimum contacts analysis is whether the exercise of specific jurisdiction would comport with the concepts of "fair play and substantial justice." Burger King, 471 U.S. at 476. At this stage, the Ninth Circuit considers seven factors to determine whether the exercise of jurisdiction would be reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternate forum. Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991), citing Insurance Co. of North America v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

The first of the seven factors—the extent of Joslin's purposeful interjection into Oregon's

affairs—is informed by the previous conclusion that Joslin did not purposefully avail itself of the privilege of conducting business in Oregon. As explained above, Joslin's purposeful interjection into the affairs of Oregon is minimal.

The second factor is the burden on defendant, which would be substantial in this case. Joslin performs construction solely in Hawaii. Witnesses for Joslin are located in Hawaii, including: (1) the people who know about the alleged defects in manufacture of the steel; (2) the people who know about OPMF's attempt to get paid in exchange for releasing the steel held on the docks in Hawaii; (3) the people who negotiated the purchase order; (4) the shipper's representative who knows the present whereabouts of the steel that has been withheld from Joslin; and (5) the people who know about the impacts of OPMF's conduct and threats to place a lien on the Hawaii construction project.

The remaining five factors (interference with sovereignty of Hawaii, Oregon's interest in adjudicating this dispute, judicial efficiency, plaintiff's interest in obtaining relief, and the existence of an alternative forum) support a finding that the exercise of personal jurisdiction would not be reasonable. Hawaii's interest in resolving this dispute is substantial because it effects a Hawaiian construction project and a lien threatened thereon. It concerns the quality and disposition of steel physically located in Hawaii. Furthermore, as Joslin notes, both the seller and buyer have potential remedies under the Uniform Commercial Code: Joslin may cover to complete the Hawaiian project and OPMF may resell the steel. Those remedies must be undertaken in good faith and in a commercially reasonable manner. A court in Hawaii, where both the project and the steel are located, can best make those determinations, and plaintiff's interest in obtaining effective relief would thus be well served by a Hawaiian court.

OPMF's argument that it has an interest in adjudicating the case in Oregon goes no further

than to point out that OPMF is located in Oregon. The only Oregon-based witness OPMF names is Mr. Comm. Though there are likely others, OPMF has not specified any for the court's consideration. Morever, it seems unlikely that OPMF could put on its case-in-chief without the testimony of Hawaii-based witnesses, such as Mr. West, Mr. Hoppe and representatives of the shipping company responsible for holding and releasing the steel on the docks in Hawaii.

On balance, considering the relevant factors, it would be unreasonable to exercise specific jurisdiction over Joslin. Because OPMF cannot establish that all three prongs of the minimum contacts test are satisfied, Joslin's motion to dismiss for lack of personal jurisdiction should be granted. In light of this conclusion, it is unnecessary to reach Joslin's motion to dismiss for improper venue and improper to reach Joslin's alternative motion to transfer venue.

## RECOMMENDATION

For these reasons, defendant's Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, to Transfer Venue (docket No. 5) should be GRANTED on the ground that this court lacks personal jurisdiction over defendant.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due February 14, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due within 14 days, and the review of the Findings and

/ / /

/ / /

/ / /

Recommendation will go under advisement on that date or when the response is filed, whichever occurs first.

DATED this 30th day of January, 2006.

                                            /s/Donald C. Ashmanskas
                                            DONALD C. ASHMANSKAS
                                            United States Magistrate Judge